FILED & ENTERED

APR 23 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia   DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 2:05-bk-42577-PC |
| | ) | |
| ANGELA Y. DUBE, | ) | Chapter 7 |
| | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | |
| | ) | Date:   April 9, 2013 |
| | ) | Time:   9:30 a.m. |
| | ) | Place:  United States Bankruptcy Court |
| Debtor. | ) | Courtroom # 1468 |
| | ) | 255 East Temple Street |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | Los Angeles, CA 90012 |

This matter comes before the court on objection by Kelly Dube ("Dube"), the Debtor's former spouse, and the United States trustee (UST") to the final applications for compensation of Robinson Diamant & Wolkowitz, APC ("RDW"), Levene, Neale, Bender, Yoo & Brill, L.L.P. ("LNBYB"), and Sheasby & Middleton, P.C. ("S&M") for legal services rendered and costs advanced to Angela Y. Dube ("Debtor"), as debtor in possession, in the chapter 11 portion of this case. Appearances were stated on the record. Having considered the pleadings, evidentiary record, and arguments of counsel, the court makes the following findings of fact and conclusions

1

1    of law pursuant to F.R.Civ.P. 52(a)(1),[1] as incorporated into FRBP 7052 and applied to contested

2    matters in bankruptcy cases.

3    ## I.  STATEMENT OF FACTS

4        This case essentially involves a two-party dispute between the Debtor and Dube that has

5    been pending before this court for the past 13 years.  The taxing authorities and other creditors

6    have waited patiently to be paid.  Now that the case is ready to close, the fight continues over

7    attorneys' fees and costs that were incurred by the estate in the chapter 11 phase of the case.

8        On October 13, 2005, Debtor filed her voluntary petition under chapter 7 of the Code in

9    the above referenced case.[2]  Nancy Knupfer ("Knupfer") was appointed as chapter 7 trustee.  In

10   amended Schedule A, Debtor listed her residence at 3311 S. Bentley, Los Angeles, California

11   (the "Bentley Property") valued at $849,000 and encumbered by a first deed of trust lien to

12   Washington Mutual Bank securing a debt of $236,189.  Debtor also listed a one-half interest in

13   certain real property at 8021 S. Vermont Avenue, Los Angeles, California (the "Vermont

14   Property") valued at $375,000, and a one-quarter interest in certain real property at 1328 W.

15   Arbutus Avenue, Compton, California (the "Arbutus Property") valued at $375,000.  According

16   to amended Schedule D, the Vermont Property secured a $107,741 debt and the Arbutus

17   Property secured a $87,101 debt.

18       In amended Schedule B, Debtor disclosed a community property interest in three sole

19   proprietorship businesses:  Caduceus Financial and Insurance Services ("CFIS"), Aloha Real

20   Estate ("Aloha"), and Palmetto Property Management ("Palmetto").  CFIS was in the business of

---

21

22   [1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse

23   Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable

24   certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California

25   ("LBR").

26

27   [2] Upon the filing of the petition, the case was assigned to Hon. Samuel L. Bufford, United States Bankruptcy Judge.  After Judge Bufford's retirement, the case was reassigned to

28   Hon. Peter H. Carroll, United States Bankruptcy Judge, on August 23, 2010 pursuant to Administrative Order No. 10-09 dated August 11, 2010.

lending money secured by deeds of trust against real property.  In 2004, CFIS held promissory notes totaling at least $261,000.  CFIS also held title to two real properties which the Debtor claimed as estate property.  Aloha was a real estate brokerage firm, and Palmetto was in the business of managing real property.  None of the businesses appear to have been operating on the petition date.

On the petition date, Debtor was also in the midst of a hotly contested divorce from Dube in Case No. BD383669, <u>Marriage of Angela Dube and Kelly Dube</u>, pending in the Superior Court of California, County of Los Angeles ("Marital Dissolution Action").  By order entered on December 12, 2005, the court granted Dube's motion seeking relief from the automatic stay to proceed to trial in the Marital Dissolution Action.  The order provided, in pertinent part, that:

> [T]he stay is modified, granting Movant relief to proceed with the Dissolution of Marriage Action to final judgment in the Superior Court of California, County of Los Angeles as to the issues of the division of community property and community liabilities, confirmation of separate property and separate liabilities, and all other issues pertaining to the property and finances of the spouses with the stay to remain in effect as to the enforcement of any money judgement arising therefrom against the Debtor or the Debtor's estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.  The stay shall also remain in effect as to the liquidation, sale or other disposition of estate property pending further order of the Bankruptcy Court.[3]

On February 2, 2006, a Judgment on Reserved Issues ("Judgment") was entered in the Marital Dissolution Action after a trial on the merits.  The Judgment provided, in pertinent part, that taxes owed for tax years 1993 through 2003 by the Debtor and Dube constitute community debts that must be paid from community property assets.  Debtor received a discharge on April 27, 2006.

From the start there was little cooperation between Debtor and Dube in the Debtor's bankruptcy case, according to the docket.  On May 3, 2006, Knupfer filed a motion seeking authority to sell the Bentley Property to Dawn Bluman ("Bluman") for the sum of $829,000 free and clear of liens.  Knupfer estimated that the sale would "net the Estate approximately

---

[3] Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 ("RFS Order"), Dkt. # 10, 3:9-19.

$162,974.00 after the payment of all liens, [Dube's] interest and the Debtor's claimed homestead exemption in the amount of $75,000.00."[4] Debtor responded by opposing the motion and seeking conversion of her case to a case under chapter 11. On May 25, 2006, the court granted the Debtor's motion over Knupfer's opposition and converted the case to chapter 11.

On June 5, 2006, Debtor filed an amended motion seeking to sell the Bentley Property to Bluman for $829,000, subject to overbid. In response, Dube filed a 132-page limited opposition to the proposed sale and joined Knupfer in a motion seeking reconversion of the case back to chapter 7.

On July 7, 2006, an Order Granting Amended Motion for an Order: (1) Authorizing Sale of Real Property Pursuant to 11 U.S.C. § 363(b) and 1107(a); (2) Authorizing Sale of Real Property Free and Clear of a Postpetition Lien of the Internal Revenue Service Pursuant to 11 U.S.C. § 363(f) with Such Lien to Attach to the Sale Proceeds; (3) Approving the Proposed Overbid Procedure; and (4) Approving Payment of Commissions ("Sale Order") was entered in the case which, among other things, authorized a sale of the Bentley property to Hassan Glal for the sum of $885,000 and directed that certain liens and encumbrances be paid directly from escrow. The order further provided:

> The sale of the Property is free and clear of the lien of the Internal Revenue Service recorded on January 23, 2006 with the Los Angeles County Recorder's Office as Instrument No. 06-0160804, which lien shall attach to the sale proceeds with the same priority and validity that it has with respect to the Property.[5]

Knupfer's motion to reconvert the case to chapter 7 was denied on September 11, 2006.

During the chapter 11 phase of the case, the Debtor found herself in the difficult position of attempting to discharge her responsibility, as debtor in possession, to propose a meaningful plan of reorganization within a reasonable period of time while, at the same time, litigating with Dube in the Marital Dissolution Action regarding (1) a division of community property, including her interest in the real property at 12691 Hansa Court, Lynwood, California ("Hansa Property"), CFIS, Aloha and Palmetto, and community liabilities, and (2) a declaration regarding

---

[4] Notice of Motion and Motion to Sell Property of the Estate, Dkt. # 31, 4:7-9.

[5] Sale Order, Dkt. # 71, 4:1-6.

4

the parties' respective separate property and separate liabilities.  Absent a final determination by the state court of these issues, the Debtor was unable to identify with any precision the assets that constituted property of the estate that were available for liquidation for the benefit of her creditors and the debts to be treated under any proposed plan.

When the Debtor sought to discover assets of the estate, to employ professionals, or to sell the Debtor's interest in property of the estate, Dube would object and litigation would ensue. On July 28, 2006, Debtor obtained authority to examine Dube pursuant to FRBP 2004 regarding assets of the bankruptcy estate and to determine the extent of community obligations incurred by Dube through the operation of CFIS, Aloha and Palmetto.  Debtor did not receive the majority of the requested documents until late December 2006 nor was Debtor able to conduct an examination of Dube until March 28, 2007.

On January 17, 2007, Dube objected to the Debtor's application to employ Keller Williams Realty for the purpose of listing and selling the Vermont Property.  Dube's objection was overruled.  On February 16, 2007, Dube objected to the Debtor's application to employ Steinman, Inc. to evaluate estate property in connection with the Debtor's First Amended Chapter 11 Plan as Modified.  Dube's objection was overruled.  On February 16, 2007, Dube filed a motion seeking a disgorgement of an interim allowance of fees and costs to RDW.  On April 10, 2007, Dube's motion was denied.  Dube appealed and the bankruptcy court's order was affirmed by the district court on January 19, 2010.  On June 26, 2007, Dube objected to Debtor's application to employ S&M to represent the Debtor in the Marital Dissolution Action.  Dube's objection was overruled.  Dube objected to Debtor's application seeking to expand the terms of employment of Hahn, Fife & Company, LLP ("Hahn Fife") as accountants for the Debtor to permit Hahn Fife to assist the Debtor in determining the value of assets in the Marital Dissolution Action.  Dube also objected to the Debtor's application to employ Joel M. Ward as special litigation counsel.  Both objections were resolved by stipulation.

On April 9, 2007, Debtor commenced Adversary No. 2:07-ap-01279, Angela Dube v. Kelly Dube, seeking a declaratory judgment that the Hansa Property was property of the estate and an injunction preventing Dube from seeking a determination in state court that the Hansa

5

Property was his separate property. Debtor also sought a turnover of CFIS and other community assets, and damages for an alleged willful violation of the stay. After the bankruptcy court denied Debtor's request for a preliminary injunction on the grounds that the requested relief should properly be sought in the Marital Dissolution Action, the adversary proceeding was dismissed without prejudice pursuant to a stipulation between the parties.

On May 11, 2007, the Hansa Property had equity with a value of $410,000 and liens totaling $185,600. By January 5, 2011, when a Further Judgment on Reserved Issues was entered in the Marital Dissolution Action determining that the Hansa Property was community property, the equity was gone. The Debtor's interest in the Hansa Property was abandoned in March 2011.

On April 9, 2007, Debtor commenced Adversary No. 2:07-ap-01280, Angela Dube v. Kelly Dube and Steven Newman, seeking an order authorizing the sale of the Arbutus Property pursuant to § 363(h). At that time, the Arbutus Property was worth $282,000. After six months of litigation, an order was entered in the adversary proceeding on October 26, 2007, authorizing the Debtor to proceed with a sale under certain terms and conditions set forth in the order. Due to the severe decline in the real estate market, however, the Debtor was unable to secure a buyer for the Arbutus Property on terms that complied with the order. The Arbutus Property was abandoned by the Debtor pursuant to notice dated October 21, 2008.

On July 19, 2007, Debtor sought authority to sell the Vermont Property to James E. Horton and Oretha J. Horton ("the Hortons") for the sum of $335,000 subject to overbid. Dube objected to the sale. On October 1, 2007, an order was entered overruling Dube's objection and authorizing the sale to the Hortons for $335,000.

During the six years that the case languished in chapter 11, Debtor never confirmed a plan. Between September 11, 2006 and March 1, 2011, Debtor filed the following disclosure statements and proposed plans of reorganization: (1) Debtor's original disclosure statement and proposed plan of reorganization filed September 11, 2006; (2) Debtor's First Amended Disclosure Statement and First Amended Plan of Reorganization filed September 22, 2006; (3) Debtor's First Amended Disclosure Statement, as Modified, and First Amended Plan of

1  Reorganization, as Modified, filed December 5, 2006; (4) Debtors Second Amended Disclosure

2  Statement and Second Amended Chapter 11 Plan of Reorganization filed April 24, 2007; (5)

3  Debtor's Third Amended Disclosure Statement and Third Amended Plan of Reorganization filed

4  October 8, 2007; (6) Debtor's Third Amended Disclosure Statement, as Modified and Third

5  Amended Plan of Reorganization, as Modified, filed December 7, 2007; (7) Modification to

6  Debtor's Third Amended Plan of Reorganization, as Modified, filed January 22, 2008; and (8)

7  Debtor's Fourth Amended Disclosure Statement and Fourth Amended Chapter 11 Plan of

8  Reorganization filed March 1, 2011. After giving the Debtor an opportunity to file a fifth

9  amended disclosure statement and plan, the court issued its Second Order to Show Cause Why

10  Case Should Not Be Dismissed or, Alternatively, Converted to a Case Under Chapter 7 ("Second

11  OSC") on July 22, 2011. After a hearing on its Second OSC, the case was reconverted to a case

12  under chapter 7 by order entered on August 31, 2011, and Alberta P. Stahl ("Stahl") was

13  appointed trustee.

14       On February 12, 2013, Stahl filed her final report as trustee. At a hearing on April 9,

15  2013, the court considered the final applications for compensation of Stahl and her professionals,

16  together with the final applications for compensation filed by professionals employed by Debtor,

17  as debtor in possession, while the case was pending in chapter 11.[6] RDW, former counsel to the

18  Debtor and debtor in possession, seeks final allowance of $484,055.50 in fees and $29,237.72 in

---

21      [6] Neither Dube nor the UST object to allowance of the fees and expenses requested in the

22  final applications for compensation of Stahl, as chapter 7 trustee, Lewis Brisbois Bisgaard &
   Smith, Inc., attorneys for the chapter 7 trustee, and Biggs & Co., accountants for the chapter 7

23  trustee. The court has not received any objection to these applications. Each of the applications

24  satisfy the requirements of LBR 2016-1(c) and demonstrate that the (1) applicant rendered actual
   services to the estate that were necessary to the administration of, or beneficial at the time at

25  which the services were rendered toward the completion of, the case, and the compensation

26  sought for such services is reasonable; and (2) the expenses incurred on behalf of the estate for
   which reimbursement is sought were actual and necessary. An order will be entered allowing as

27  final compensation the fees and expenses requested in each of these applications pursuant to §

28  330(a)(1).

costs, for a total of $513,293.22, for the period of May 26, 2006 through December 31, 2009.[7]
LNBYB, successor counsel to the Debtor and debtor in possession, seeks final allowance of
$103,862.00 in fees and $1,862.90 in costs, for a total of $105,724.90, for the period of January
1, 2010 through August 31, 2011.[8]  S&M, special counsel to the Debtor and debtor in possession,
seeks final allowance of $191,149.09 in fees and $8,151.98 in costs, for a total of $199,301.07,
for the period of May 2, 2007 through August 31, 2011.[9]

On March 19, 2013, a Stipulation Between United States of America on Behalf of its
Agency, the Internal Revenue Service, and Robinson, Diamant & Wolkowitz, Levene, Neal,
Bender, Yoo & Brill, L.L.P., and Sheasby & Middleton Regarding Disbursement of Funds from
Bankruptcy Estate ("Stipulation") was filed with the court under the terms of which RDW,
LNBYB and S&M reduced their respective compensation requests to permit the holders of
allowed unsecured priority claims to be paid in full.  The Stipulation acknowledges that the
estate will have $453,313.02 in funds remaining after the payment of chapter 7 administrative
expenses and provides, in pertinent part:

> In lieu of the propose pro rata distribution of $453,313.02 to RDW, LNBYB, and
> [S&M] in the Trustee's Final Report, RDW, LNBYB, and [S&M] hereby agree
> to the following distribution:
>
> a.    RDW is owed $513,292.22 in attorney's fees and costs, but agrees to
>       receive and accept $218,103.00 of its claim, of which $141,712.00 has
>       already been paid.  Accordingly, RDW agrees to a final distribution of
>       $76,391.00 from the estate;

---

[7] Second and Final Application of Robinson, Diamant & Wolkowitz for Allowance of
Compensation and Reimbursement of Expenses as Counsel for the Debtor in Possession, Dkt. #
372, 2:6-7.

[8] First and Final Application of Levene, Neale, Bender, Yoo & Brill L.L.P. for
Allowance of Compensation and Reimbursement of Expenses as Counsel for Debtor in
Possession, Dkt. # 371, 2:4-6.

[9] First and Final Application of Sheasby & Middleton, P.C., Special Litigation Counsel,
for Approval and Payment of Compensation and Reimbursement of Expenses for the Period May
2, 2007 Through August 31, 2011 ("S&M's Application"), Dkt. # 380, 14:4-6.

b.    LNBYB is owed $105,724.90 in attorney's fees and costs, but agrees to receive and accept $44,873.00 of its claim from the estate; and

c.    [S&M] is owed $199,301.07 in attorney's fees and costs, but agrees to receive and accept $84,877.00 of its claim from the estate.[10]

The Stipulation further provides that "the remaining monies in the estate, in the estimated amount of $247,172.02, will be used to provide payment to priority claimants of the estate."[11]

Notwithstanding the Stipulation, Dube objects to the allowance and payment of any fees to RDW, LNBYB or S&M for work performed in the chapter 11 case and seeks disgorgement of $141,712.00 in interim fees allowed and paid to RDW by order entered on December 14, 2006. The UST did not withdraw its objection in response to the Stipulation. However, the UST stated at the hearing on April 9, 2013, that it supports final allowance of fees and expenses to RDW, LNBYB and S&M in the amounts set forth in the Stipulation to resolve its objection and provide full payment to the holders of allowed unsecured priority claims. The court heard argument and took the matters under submission.

## II. DISCUSSION

This court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157(b) and 1334(b). The objections of Dube and the UST to the final applications for compensation of RDW, LNBYB and S&M are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

A. Standard for Awarding Final Compensation

Section 330(a)(1) authorizes the court to award to an attorney employed under § 327(a) or § 1103 "reasonable compensation for actual, necessary services" rendered by the attorney and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) &(B). This authority includes the discretion, upon motion or sua sponte, to "award compensation that is less than the

---

[10] Stipulation, Dkt. # 417, 4:22 to 5:10.

[11] Id. 5:18-20. According to the Trustee's Final Report, the allowed unsecured priority claims total $247,836.98, consisting of Claim # 20A of the Internal Revenue Service in the amount of $225,275.31 and Claim # 23 of the Franchise Tax Board in the amount of $22,561.67. Trustee's Final Report, Dkt. # 411, at 25.

9

amount" requested. Id. § 330(a)(2). Section 330(a)(3) directs the court to assess "the nature, the extent, and the value" of the legal services provided when determining the amount of reasonable compensation to award, taking into consideration "all relevant factors," including:

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; . . . and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

11 U.S.C. § 330(a)(3). The United States Bankruptcy Appellate Panel of the Ninth Circuit has "rejected a standard that services are only compensable if they result in a material benefit to the estate." Ferrett & Slater v. United States Trustee (In re Garcia), 335 B.R. 717, 724 (9th Cir. BAP 2005). Given the express language of § 330(a)(3)(C), a professional properly employed by the estate "need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered." Id.; see Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet), 251 B.R. 103, 107-08 (9th Cir. BAP 2000).

In the Ninth Circuit, the primary method used to determine a reasonable fee in bankruptcy cases is to calculate the lodestar. Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 598 (9th Cir. 2006); Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1471 (9th Cir. 1983).[12] A court computes the lodestar by multiplying the number

---

[12] The lodestar approach, however, is not the exclusive method for calculating fees. Eliapo, 468 F.3d at 598 (stating that "the lodestar method is not mandatory"); Unsecured Creditors' Comm. v. Puget Sound Plywood, 924 F.2d. 955, 960 (9th Cir. 1991) (explaining that where fee applications are inadequate, courts should not be forced to wade through them to calculate the lodestar); Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.), 211 B.R 29, 36 (9th Cir. BAP 1997) (stating that the lodestar approach may be abandoned when the court cannot reasonably quantify to numerical precision the amount of the fee award).

of hours reasonably expended by a reasonable hourly rate. Yermakov, 718 F.2d at 1471; see

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (reasoning that the lodestar "calculation provides

an objective basis on which to make an initial estimate of the value of a lawyer's services").

Once the lodestar is established, there is a strong presumption that the lodestar figure represents a

reasonable fee which should be adjusted only in "rare [or] exceptional" cases. Pennsylvania v.

Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Blum v. Stenson, 465

U.S. 886, 897 (1984); Cunningham v. County of L.A., 879 F.2d 481, 488 (9th Cir. 1988), cert.

denied, 493 U.S. 1035 (1990).  However, § 330(a)(4)(A) prohibits the bankruptcy court from

allowing compensation for unnecessary duplication of services, and services that were not either

reasonably likely to benefit the debtor's estate nor necessary to its proper administration. 11

U.S.C. § 330(a)(4)(A).  Likewise, hours not reasonably expended because they are "excessive,

redundant, or otherwise unnecessary" must be excluded from the lodestar amount. Hensley, 461

U.S. at 434.

The court must also scrutinize "the circumstances and manner in which the services are

performed and the results achieved to determine a reasonable fee," including whether: (1) the

services were authorized; (2) the services were necessary or beneficial to the administration of

the estate at the time they were rendered; (c) the services are adequately documented; (d) the fees

requested are reasonable, taking into consideration the factors contained in § 330(a)(3); and (e)

the professional exercised reasonable billing judgment. Garcia, 335 B.R. at 724; Mednet, 251

B.R. at 108.

B.  The Final Compensation Sought by RDW, LNBYB, and S&M, as Reduced by the
Stipulation, is Reasonable

The services for which RDW, LNBYB and S&M seek final compensation were

authorized.  RDW, LNBYB and S&M were each properly employed as professionals pursuant to

§§ 327(a) and 1107 to assist the Debtor, as debtor in possession, in the chapter 11 case. Debtor

states under penalty of perjury that she authorized and directed RDW, LNBYB and S&M to

perform the services provided to the Debtor in the case.[13] The services for which final compensation is sought in each of the applications are adequately documented. In each application, the services performed by the attorney on behalf of the Debtor are divided by category of service. Within each category of service, the work performed is documented by (a) the date the service was performed; (b) the attorney who performed the service; (c) a description of the task performed; and (d) the time expended in performing the service recorded in increments of 1/10th an hour. The court takes judicial notice that the hourly rates reflected in each of the applications are within the range of hourly rates charged by attorneys and paralegals for similar legal services rendered in chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California.

A bankruptcy court has a duty to review fee applications even in the absence of objections by the United States trustee or parties in interest. In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994). "What the court should not do, however, not without evidence to the contrary, is to change the facts initially presented to it in an otherwise complete fee application . . [and] on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses." Matter of Hunt's Health Care, Inc., 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993). As the court correctly observed in Hunt's Health Care:

> Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed. Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market. An attorney's customary billing practices are presumptively correct. While they may not be dispositive, departing from them requires a reason and information which would warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed. Thus, the burden is on the objector "to establish

---

[13] Declaration of Angela Dube Regarding Fee Applications Filed By Debtor's Counsel and in Support of Stipulation With United States of America, Dkt. # 420, 1:28 to 2:9.

a good reason why a lower rate is essential to access a 'reasonable attorney's fee.'"

A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. . . The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them. The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

Id. at 982 (citations omitted). Attorneys' fees should not be reduced based on "inarticulate and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses." Matter of Cont'l Ill. Sec. Litig., 962 F.2d 566, 570 (7th Cir. 1992).

Dube asserts that the final compensation sought by RDW, LNBYB, and S&M should not be allowed because both the conversion of the case to chapter 11 and the work performed by each of the professionals in chapter 11 was not reasonable or necessary and resulted in little tangible benefit to the estate.[14]  However, Dube misstates the standard under § 330(a)(3)(C). The proper inquiry under § 330(a)(3)(C) is not whether a professional's services resulted in an actual benefit to the estate, but rather whether the professional's services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, [the] case."  11 U.S.C. § 330(a)(3)(C) (emphasis added).

Applying this standard, the court declines Dube's invitation to disallow final compensation for the following services:

> 1. Operating Reports. The sum of $22,324.10 and $17,905 requested by RDW and LNBYB, respectively, for the preparation of operating reports. Dube argues that such compensation should be disallowed "because the time spent preparing monthly operating reports was a complete waste of time, and not required . . . [h]ad Angela Dube's case remained a Chapter 7."[15]  However, these services were

-----

[14] Kelly Dube's Omnibus Objection to: (1) Robinson Diamant & Wolkowitz, APC's Second and Final Application for Fees and Costs, (2) Levene, Neale, Bender, Yoo & Brill's First and Final Application for Fees and Costs, and (3) Sheasby & Middleton, PC's First and Final Application for Fees and Costs ("Dube Objection"), Dkt. # 382, 17:15-19.

[15] Dube Objection 22:6-9.

13

necessary to the administration of the case at the time the services were rendered because monthly operating reports are not only the lifeblood of a chapter 11 case, but they are mandated by the court under LBR 2015-2(b) and the UST.

2. Debtor in Possession Bank Accounts & 7-Day Package. The sum of $8,627 sought by RDW for preparing the 7-day package and securing debtor in possession bank accounts. Dube seeks disallowance of such compensation because "all the time spent in preparing the 7-day package and setting up debtor-in-possession bank accounts was a complete waste of time and not required in Chapter 7."[16] However, these services were necessary to the administration of the case at the time the services were rendered because a debtor in possession is required by both § 345 and the UST to maintain estate funds in properly collateralized bank accounts and submission of the 7-day package to the UST is required in furtherance of the debtor in possession's duty under § 1107(a) to account for property of the estate.

3. Opposition to Motion for Reconversion. The sum of $14,191.50 sought by RDW for opposing Knupfer's reconversion motion. Dube reasons that "[o]pposing the former trustee's motion to reconvert was a waste of time . . . [since] Chapter 11 was never going to work."[17] On May 25, 2006, the court permitted the Debtor to exercise her right under § 706(a), over Knupfer's opposition, to convert the case from chapter 7 to chapter 11. By order entered on September 11, 2006, the court denied Knupfer's reconversion motion having determined that Knupfer had failed to establish cause to reconvert the case to chapter 7. In each instance, RDW's services in representing the Debtor were necessary and the results for the Debtor, as debtor in possession, were successful.

Dube objects to final allowance to RDW and LNBYB of final compensation in the amounts of $97,276.50 and $43,916.50, respectively, for work performed preparing disclosure statements and proposed chapter 11 plans. The court agrees that some of the services performed under this category were not necessary nor justified given the circumstances in the latter stage of the Debtor's chapter 11 case. The Debtor's chapter 7 discharge did not, of and by itself, make confirmation of a plan impossible, as alleged by Dube. But in the court's view, RDW should have realized by December 2009 that there was little reasonable possibility for an effective reorganization. The Debtor had been in chapter 11 over three years and no reorganization was in prospect. Yet, not only did the case continue in chapter 11, but the Debtor aggressively opposed

---

[16] Id. 22:23-25.

[17] Id. 23:3-4.

14

1   the court's attempts to dismiss the case or convert the case to chapter 7. In this regard, the court

2   agrees with the following assessment by the UST:

3         [T]he Debtor's professionals encountered significant challenges and
obstructive conduct by the Debtor's ex-spouse, including a lack of candor and

4         cooperation with respect to assets that the Debtor believed were property of her
bankruptcy estate. But the Debtor voluntarily converted her case to Chapter 11

5         presumably because she believed that she could realize an outcome that was better

6         for creditors than if this case remained in Chapter 7. It was incumbent upon the
Debtor and her professionals to acknowledge and respond to circumstances that

7         made the prospect of liquidating in Chapter 11 not reasonably likely to benefit the
estate and creditors.[18]

8

9        On February 11, 2011, the court issued an Order To Show Cause Why Case Should Not

10  Be Dismissed, or Alternatively, Converted to Chapter 7 ("First OSC"). Debtor opposed the First

11  OSC, arguing that the recent conclusion of the Marital Dissolution Action would permit her to

12  move forward to confirmation with a fourth amended disclosure statement and plan. On March

13  1, 2011, Debtor filed a Fourth Amended Disclosure Statement and Fourth Amended Plan of

14  Reorganization. However, the court denied approval of the disclosure statement by order entered

15  on May 2, 2011, and directed the Debtor to file a fifth amended disclosure statement and plan by

16  July 15, 2011. On July 22, 2011, the court issued the Second OSC due to the Debtor's failure to

17  file a fifth amended disclosure statement and plan as ordered on May 2, 2011. When the Debtor

18  failed to respond to the court's Second OSC, the case was converted to chapter 7.

19        Given the substantial fee reductions contained in the Stipulation, it appears that both

20  RDW and LNBYB acknowledge that work performed in the latter stages of the Debtor's chapter

21  11 case may not have been necessary nor justifiable under the standard mandated by § 330(a)(3).

22  RDW has agreed to reduce its final compensation request by $295,189.22 – from $513,292.22 to

23  $218,103, representing a 58% reduction in fees. LNBYB has also agreed to reduce its final

24  compensation request by 58%, or $60,851.90 -- from $105,724.90 to $44,873. Dube's remaining

25  itemized objections to the fee applications of RDW and LNBYB seek disallowance of fees

26

27       [18] Objection of United States Trustee to Fee Applications By: Robinson, Diamant and
Wolkowitz; Levene Neale Bender Yoo and Brill; and Sheasby and Middleton, Dkt. # 418, 12:1-

28  8.

totaling $237,839.50. Even if the court were to find all of Dube's remaining objections meritorious, RDW and LNBYB have in the proper exercise of billing judgment voluntarily agreed to reduce the fees sought far in excess of the remaining itemized disallowance sought by Dube.

Dube asserts that all fees sought by S&M should be disallowed because S&M has failed to demonstrate that the work was reasonable, necessary and benefitted the Debtor's bankruptcy estate. According to Dube, "there are $161,000 of time entries that are so vague that it cannot be determined from them that [S&M] did anything that was reasonable, necessary and beneficial to [Debtor's] bankruptcy case."[19] Dube further objects to allowance of $30,000 in fees to S&M for work performed on three specific tasks which, according to Dube, did not benefit Debtor's estate: (1) time spent communicating with Debtor's chapter 11 attorneys, RDW and later LNBYB; (2) time spent through a hearing in the Marital Dissolution Action valuing the Hansa Property; and (3) time spent through a hearing in the Marital Dissolution Action valuing CFIS.[20]

Again, the proper standard is not whether a professional's services resulted in a tangible benefit to the estate, but rather whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, the case. With respect to the three specific tasks targeted by Dube, it is undisputed that Dube sought relief from the stay to continue the Marital Dissolution Action. S&M was authorized to represent the Debtor, as debtor in possession, in the Marital Dissolution Action. Under the RFS Order, the Superior Court was specifically authorized in the Marital Dissolution Action to divide the community and separate property of the Debtor and Dube. S&M represented the Debtor for nearly 5 years in the Dissolution Action. S&M's representation included a trial conducted in May 2009, and the defense of numerous motions filed by Dube. S&M's services were necessary to maximize and preserve the Debtor's interest the marital property, both separate and community, which constituted property of the estate. There is no evidence that any service

---

[19] Dube Objection 24:26 to 25:2.

[20] Id. 25:3-10.

16

rendered by S&M in conjunction with the Marital Dissolution Action was not reasonably likely to benefit the estate at the time the service was rendered.

Despite objecting to $161,000 worth of time entries as vague, Dube has not undertaken to identify any specific improper, insufficient, or excessive entries nor direct the court's attention to them. As previously noted, attorneys' fees should not be reduced based on "inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses." Cont'l Ill. Sec. Litig., 962 F.2d at 570. To the extent there may be "lumping" in the time entries contained in the application, S&M has already agreed in the exercise of proper billing judgment to voluntarily reduce its final compensation request by $114,424.07 – from $199,301.07 to $84,877.00, representing a 58% reduction in fees.

C. The Final Compensation Sought by RDW, LNBYB, and S&M is Not Barred by the Rooker Feldman Doctrine

Dube points to the language of the Judgment entered in the Marital Dissolution Action on February 2, 2006, which provides in part that taxes owed for tax years 1993 through 2003 by the Debtor and Dube constitute community debts that must be paid from community property assets, and argues that payment of final compensation to RDW, LNBYB and S&M prior to payment in full of the allowed claims of the Internal Revenue Service and Franchise Tax Board violates the Rooker Feldman Doctrine and the Full Faith and Credit Clause of the United States Constitution.[21] The court disagrees.

First, the court notes that the Rooker Feldman Doctrine rarely applies to proceedings that involve substantive rights under the Code. As the Ninth Circuit has observed:

> Rooker – Feldman's application in bankruptcy 'is limited by the separate jurisdictional statutes that govern federal bankruptcy law,' and the doctrine thus 'has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case.' Bankruptcy courts have the power to 'avoid state judgments in core bankruptcy proceedings, may modify judgments, and, of primary importance in this context, may discharge them.'

---

[21] Id. 6:8-16.

1   Stark v. Stark, 414 Fed.Appx. 981, 982, 2011 WL 607450, 1 (9th Cir. 2011), quoting Sasson v.

2   Sokoloff (In re Sasson), 424 F.3d 864, 871 (9th Cir. 2005).

3        Second, as to allowed unsecured priority tax claims, Dube's point is moot.  RDW,

4   LNBYB and S&M have agreed to reduce their respective compensation claims to permit all

5   unsecured priority tax claims to be paid in full.  Even if Dube's argument had merit, a final

6   allowance of compensation to RDW, LNBYB and S&M in the amounts set forth in the

7   Stipulation would not conflict with the Judgment -- at least as to unsecured priority tax claims.

8        Finally, with respect to unsecured non-priority tax claims, Dube previously argued in a

9   motion seeking a disgorgement of interim compensation paid to RDW that "the payment of

10  RDW's fees from the proceeds of the sale violated the [Judgment]."[22]  By order entered on April

11  10, 2007, the bankruptcy court denied Dube's motion and Dube appealed.  On January 19, 2010,

12  the district court affirmed the decision of the bankruptcy court in Case No. CV 07-02873 MMM,

13  In re Angela Y. Dube, Debtor.[23]  In its order, the district court considered the language of both

14  the Judgment and the RFS Order and concluded that the bankruptcy court had authority to pay

15  administrative expenses from proceeds attributable to the sale of community property in the

16  Debtor's bankruptcy estate.[24]  In so holding, the district court stated:

17          [T]he bankruptcy court did not err in ordering the payment of RDW's fees
            from assets of the bankruptcy estate.  As set forth in § 541(a)(2)(A), those assets
18          included the undivided community property of the debtor and non-debtor spouse.
            Kelly appears to argue that, because the state court determined, after the
19          commencement of the bankruptcy proceedings and the creation of the bankruptcy
            estate, that administrative expenses were, for state law purposes, Angela's
20          separate post-petition obligations, this precluded the bankruptcy court from
            ordering the disbursement of so much of the estate property as comprised his
21          portion of the community property to pay such expenses.  The court does not
22

23      [22] Notice of Motion and Motion to Disgorge Fees Improperly Paid to Debtor's Chapter
24  11 Counsel, Dkt. # 151, 5:9-14.

25      [23] Reply to Objections Filed By Kelly Dube and the United States Trustee to Robinson,
    Diamant & Wolkowitz, APC's Second and Final Application for Fees and Costs; and Levene,
26  Neale, Bender Yoo & Brill's First and Final Application for Fees and Costs, Dkt. # 419, (Exhibit
27  7) at 109.

28      [24] Id. 122:8-9.

1  agree. The bankruptcy court indisputably retained control over the disbursement of estate property, both under the order partially lifting the stay and the
2  Supremacy Clause.

3      While the state court, following Angela's commencement of bankruptcy
4  proceedings, and the inclusion of community property in the bankruptcy estate, found that any administrative expenses she incurred were separate, post-
5  separation obligations, that finding did not preclude the bankruptcy court from
6  making orders regarding disbursement of the assets of the bankruptcy estate. The state court's order merely acknowledged that Kelly had a right to reimbursement
7  of his separate property interest. The state court did not preclude, and could not have precluded, the bankruptcy court from making orders regarding the
8  disbursement of the property of the bankruptcy estate. Nor did it dictate that
9  Kelly had a priority over other creditors or over professionals who provided services to the bankruptcy estate. Rather, as in Mantle, Kelly retained his claim to
10  one-half of the proceeds from the sale of the community property home. Kelly
11  can press this claim in the bankruptcy court or upon final division of the couple's property in state court, where he can, if appropriate, obtain a greater distribution
12  of community property assets than Angela to take into account the fact, if it is a fact, that his share of the community property was used to pay administrative
13  expenses that were Angela's separate post-separation obligations.[25]

14  D. Dube Has Failed to Establish the Existence of An Actual Conflict of Interest Warranting

15  Disallowance of Final Compensation

16      Dube asserts that "[t]he Court should deny Robinson Diamant's Application, and the

17  Application of Robinson's successor firm, Levene, because Robinson Diamant and Levene each

18  had an actual conflict with their client Angela Dube, in regards to converting Angela's case from

19  7 to 11, keeping it in the (doomed to failure) Chapter 11, for over 5 years, and opposing

20  reconversion to Chapter 7, despite all of the several proposed plans being nonconfirmable, as a

21  matter of law."[26] Dube does not provide specific evidence of an actual conflict of interest, such

22  as a pre-petition claim against the Debtor or prior representation of adverse parties. Rather,

23  Dube asks the court to look at the facts and circumstances of the case and conclude that RDW

24  and LNBYB's continued representation of Debtor in chapter 11 gave rise to a conflict of interest

25

26      [25] Id. 122:8 to 123:17 (citations omitted) (emphasis added).

27      [26] Dube Objection 14:2-7. Dube does not allege the existence of a conflict of interest
28  between the Debtor and S&M.

19

1  given the length of time in chapter 11 without a confirmed plan, the cost of chapter 11

2  representation, and the reconversion to chapter 7.

3      To obtain court approval to be employed to represent or assist the trustee or debtor-in-

4  possession in a bankruptcy case, § 327(a) requires application of a two-prong test showing that

5  the attorney (a) does not hold or represent an interest adverse to the estate and (b) is a

6  disinterested person. 11 U.S.C. § 327(a). Either prong requires that an attorney employed by a

7  trustee be free of actual and potential conflicts of interest. See In re Park Helena Corp., 63 F.3d

8  877, 881 (9th Cir. 1995), cert. denied sub.nom. Neben & Starrett v. Chartwell Fin. Corp., 516

9  U.S. 1049 (1996). Under § 328(c) the court may deny allowance of compensation for services

10  and reimbursement of expenses if, at any time during the attorney's employment pursuant to §

11  327, the attorney is not a disinterested person or represents or holds an interest adverse to the

12  estate. 11 U.S.C. § 328 (c). Thus, there is statutory authority for denial of compensation where

13  conflicts of interest exist or develop while representing the trustee or debtor in possession. In re

14  Perry, 194 B.R. 875, 879 (E.D. Cal. 1996); In re G.H.R. Energy Corp., 60 B.R. 52 (Bankr. S.D.

15  Tex. 1985).

16      The term "actual conflict" is not defined under the Code. Courts have "considerable

17  latitude in using their judgment and discretion" in making a determination as to an actual

18  conflict. In re BH & P. Inc., 949 F.2d 1300, 1315 (3d Cir. 1991). The inquiry as to the existence

19  of an actual conflict is "necessarily case-and fact-specific." In re AFI Holding, Inc., 530 F.3d

20  832, 848 (9th Cir. 2008) ("Whether an interest is 'materially adverse' necessarily requires an

21  objective and fact-driven inquiry.").

22      Dube is correct insofar as he asserts that many of the services rendered by RDW and

23  LNBYB in the latter stages of the Debtor's chapter 11 case were unnecessary, particular after

24  December 2009 when the estate appears to have been administratively insolvent. However,

25  Dube has not provided any competent evidence that either RDW or LNBYB held or represented

26  an interest materially adverse to the estate or were not disinterested while representing the

27  Debtor as debtor in possession. Nor do the authorities cited by Dube stand for the proposition

28  that an attorney's interest in continued representation of a debtor in possession in an unsuccessful

20

1  chapter 11 case, in and of itself, constitutes an actual conflict of interest warranting

2  disqualification or denial of fees under § 328(c).  In the court's view, the issue is whether RDW

3  and LNBYB have established that the work performed in the chapter 11 phase of the Debtor's

4  bankruptcy meets the standard for compensation from the estate under § 330(a), not whether

5  compensation should be disallowed under § 328(c).  The court has already conducted that

6  analysis.

7  E.  Final Compensation Will Not Be Denied RDW for Alleged Failure to Account

8       Dube asserts that Debtor, as debtor in possession, derived total net proceeds of $737,953

9  from the sale of the Bentley and Vermont Properties during the chapter 11 case, but that only

10  $507,440 was delivered to Stahl upon conversion of the case to chapter 7.  Dube asks the court to

11  require RDW "to account for what happened to the other $230,513" and "not allow ANY fees or

12  costs to [RDW], on a final basis, until and unless it does so."[27]  Dube does not provide any

13  evidence that estate funds were lost or misappropriated by RDW.

14       From May 26, 2006 to August 31, 2011, Debtor administered her bankruptcy case in

15  chapter 11.  In her fiduciary capacity as debtor in possession, Debtor submitted monthly

16  operating reports to the UST which included, among other things, an itemization of the receipts

17  and disbursements from debtor in possession accounts.  Those operating reports were reviewed

18  by the UST.  Because the Debtor did not file monthly operating reports with the court until April

19  2010, the court is unable to reconstruct independently the debtor in possession account receipts

20  and disbursements for the period of May 26, 2006 through August 31, 2011.  However, there was

21  no allegation of loss or misappropriation of estate funds by the Debtor or any professional during

22  the administration of the case.

23       After conversion of the case to chapter 7, Stahl had the duty as chapter 7 trustee to

24  investigate the financial affairs of the debtor, including the transactions of the Debtor, as debtor

25  in possession, and her professionals in the preceding chapter 11 case, and to collect and reduce to

26  money the property of the estate.  11 U.S.C. § 704(a)(1), (2) & (4).  On or about February 6,

27  2013, Stahl submitted a Trustee's Final Report ("TFR") to the UST which reflects a "Turnover

28  _____
     [27] Id. 27:16-18.

21

of DIP funds" in the amount of $507,440.08 on September 19, 2011.[28]  In her TFR, Stahl states under penalty of perjury that she has "faithfully and properly fulfilled the duties enumerated in 11 U.S.C. § 704" and "that all known assets of the estate have been reduced to cash."[29]  Stahl's TFR was reviewed and approved by the UST, and then filed with the court by the UST,  There is nothing in Stahl's TFR that indicates a loss or misappropriation of estate funds during the pendency of the case.  Based on the evidentiary record, the court declines to order the accounting requested by Dube as a condition to final allowance of compensation to RDW.

F. Final Compensation Will Not Be Denied S&M for Alleged Failure to Disclose

Finally, Dube alleges that S&M received undisclosed payments totaling $20,000 during the Debtor's bankruptcy case and requests that the court "require Sheasby to, under oath, state total payments it received for services it performed, before and during the bankruptcy case."[30]  On June 13, 2007, Debtor filed an application to employ S&M as special counsel.  In his declaration in support of the application, Matthew Sheasby disclosed under penalty of perjury that:

> Sheasby & Middleton has an unsecured post-petition claim against the Debtor for post-petition legal services in the approximate amount of $93,885 as of April 30, 2007.  From the Debtor's exempt funds, Sheasby & Middleton received $15,000 in September 2006 and $5,000 in December 2006, which partially satisfied the Debtor's post-petition obligation to my firm.[31]

S&M's employment was approved over Dube's objection.  In its fee application, S&M disclosed that it "received $0 in post-petition payments toward [the] fees and costs" requested in the application.[32]  There is no evidence that S&M has received funds since the filing of the

---

[28] Trustee's Final Report, Dkt. # 411, at 11.

[29] Id. at 1-2.

[30] Dube Objection 28:25-27.

[31] Application to Employ Sheasby and Middleton, P.C. as Special Counsel for Debtor and Debtor in Possession, Dkt. # 199, 8:3-9.

[32] S&M's Application 4:14-15.

22

1  petition in addition to the funds previously disclosed to the court. There is no evidence of an

2  undisclosed payment to S&M by the Debtor or any third party. Therefore, the court declines to

3  order further disclosure by S&M based on the record that is before the court.

4                                    III. <u>CONCLUSION</u>

5          For the reasons stated, the objections of Dube and the UST to the final applications for

6  compensation of RDW, LNBYB, and S&M are overruled. The court will allow as final

7  compensation the fees and expenses sought by RDW, LNBYB, and S&M, as modified by the

8  Stipulation, for legal services rendered and costs advanced to the Debtor, as debtor in possession,

9  and estate in the chapter 11 portion of this case.[33]

10         Stahl or her counsel shall lodge electronically via LOU a separate order to be entered in

11 the case allowing each of the applications for final compensation consistent with this

12 Memorandum Decision.

13

14                                           ###

15

16

17

18

19

20

21

22

23

24

25    Date: April 23, 2013

26                                              Peter H. Carroll
                                                United States Bankruptcy Judge

27    _____
         [33] The court will also allow the requests of Stahl and her professionals for allowance of
28 final compensation, as set forth in footnote # 6.

                                              23

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): __**MEMORANDUM DECISION**__ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) 04-23-2013 , the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Alane A Becket 2    notices@becket-lee.com
- Vivian Bodey    vivian.bodey@irscounsel.treas.gov
- Michael T Delaney    mdelaney@lbbslaw.com
- Lawrence A Diamant    lad@lnbrb.com, katie@lnbrb.com
- Helen R Frazer    hfrazer@aalrr.com
- Todd A Frealy    taf@lnbrb.com
- Amy L Goldman    goldman@lbbslaw.com
- Irving M Gross    img@lnbrb.com, angela@lnbrb.com
- Kimberly A Huangfu    HUANGFU@LBBSLAW.COM
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Scott Lee    slee@lbbslaw.com
- Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net
- Craig G Margulies    craig@marguliesfaithlaw.com, staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- Christopher M McDermott    ecfcacb@piteduncan.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Carmela Pagay    ctp@lnbrb.com
- Lindsey L Smith    lls@lnbyb.com
- Alberta P Stahl (TR)    trusteestahl@earthlink.net, astahl@ecf.epiqsystems.com;trusteestahl\;\;\;.net@cacbapp.cacb.circ9.dcn
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Joshua D Wayser    joshua.wayser@kattenlaw.com, kim.johnson@kattenlaw.com,ecf.lax.docket@kattenlaw.com,pamela.tsao@kattenlaw.com
- Edward M Wolkowitz    emw@lnbrb.com
- internal revenue service (nkakuske)    sonia.m.aragon@irs.gov

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below: